UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| BALD HILL REALTY CO. d/b/a BALD HILL SUBARU | |
| Plaintiff, | |
| v. | Civil Action No. 2007-298-S |
| SUBARU OF NEW ENGLAND, INC. | |
| Defendant. | |

**DEFENDANT SUBARU OF NEW ENGLAND, INC.'S OBJECTION TO PLAINTIFF BALD HILL SUBARU'S MOTION TO REMAND**

Defendant, Subaru of New England, Inc. ("SNE") hereby objects to Plaintiff, Bald Hill Subaru's motion to remand. In support of its objection, SNE relies upon the accompanying opposition and all accompanying exhibits thereto.

SNE respectfully requests that the Court deny Bald Hill Subaru's motion to remand.

Respectfully submitted,
SUBARU OF NEW ENGLAND, INC.
By its attorneys,

/s/ Mitchell R. Edwards
Mitchell R. Edwards (Attorney No. 6942)
Hinckley, Allen & Snyder
50 Kennedy Plaza, Suite 1500
Providence, RI 02903-2393
(401) 274-2000
(401) 277-9600 (fax)
medwards@haslaw.com

OF COUNSEL:

Howard M. Cooper, Esq. (admitted *pro hac vice*)
Heidi A. Nadel (admitted *pro hac vice*)
TODD & WELD LLP
28 State Street, 31st Floor
Boston, MA 02109
(617) 720-2626
Fax: (617) 227-5777
hcooper@toddweld.com
hnadel@toddweld.com

September 21, 2007



#830292v1
055837-133390

**CERTIFICATION**

Michael J. McEntee, Esq.
McEntee & McEntee
915 Tollgate Road
Warwick, RI 02886
mmcenteelaw@verizon.net

I hereby certify that I sent a copy via electronic mail and regular mail of the within Defendant Subaru of New England, Inc.'s Objection to Plaintiff, Bald Hill Subaru's Motion to Remand to the attorney of record, as listed above, on this 21st day of September, 2007.

/s/ Mitchell R. Edwards
Mitchell R. Edwards (Attorney No. 6942)

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| BALD HILL REALTY CO. D/B/A BALD HILL SUBARU,<br><br>Plaintiff,<br><br>v.<br><br>SUBARU OF NEW ENGLAND, INC.,<br><br>Defendant. | Civil Action No. 2007-298-S |

**SUBARU OF NEW ENGLAND, INC.'S OPPOSITION TO**
**DEFENDANT BALD HILL SUBARU'S MOTION TO REMAND**

Plaintiff Subaru of New England, Inc. ("SNE") respectfully submits this Opposition to the Defendant Bald Hill Realty Co. d/b/a Bald Hill Subaru's ("Bald Hill") Motion to Remand.

## INTRODUCTION

Bald Hill filed its Complaint with the Rhode Island Dealers License and Hearing Board ("Board") more than a month after SNE had instituted its declaratory judgment action in this Court and openly informed Bald Hill that it had done so. SNE's lawsuit followed months of discussions with Bald Hill about Bald Hill's dismal and worsening sales performance; a detailed notice from SNE to Bald Hill regarding its specific sales deficiencies; a six (6) month cure period for Bald Hill to correct those deficiencies; and a formal notice of termination of Bald Hill's Subaru Dealership Agreement and franchise after Bald Hill failed even to come close to curing its poor performance. SNE did not file suit until almost one month after it provided written notice of termination to Bald Hill and when it did file, SNE expressly disclosed that fact to Bald Hill.

In an obvious attempt to avoid litigating in this Court and to obtain what it perceives as a more favorable forum for it, Bald Hill sat on its rights and did nothing for months. With only one month remaining before the termination became effective, Bald Hill then quietly filed a Complaint with the Board purporting to challenge the termination and did not inform SNE despite the fact that the parties were then in discussions with each other. SNE learned of the Board proceeding only when Bald Hill attached its Board Complaint as an exhibit to its Motion to Dismiss, or in the Alternative, Motion to Stay ("Motion to Dismiss") SNE's earlier-filed declaratory judgment action. The next day, when its counsel requested and obtained a copy of the file directly from the Board, SNE learned that Bald Hill had already filed a motion to stay the termination and an Amended Complaint with the Board; none of which had been provided by Bald Hill to SNE or this Court. SNE promptly removed the Board action to this Court.

Bald Hill now asks this Court to remand this case to the Board, arguing: (i) the Dealer Board is not a "state court" within the meaning of 28 U.S.C. §1441(a) despite the indisputably adjudicative nature of Dealer Board proceedings and despite this Court's (Torres, J.) ruling directly to the contrary in 1999 in earlier termination proceedings between these same parties; and (ii) even if removal was proper, this Court should take the extraordinary step of abstaining from exercising its jurisdiction because Bald Hill "evoked the Board's powers to issue rules and regulations" and, Bald Hill argues, this case belongs before the Board where it can "conduct licensing hearings." Bald Hill's Memorandum of Law in Support of Its Motion to Remand ("BH Memo") at 9. Neither argument has merit.

*First*, the First Circuit Court of Appeals in *Volkswagen de Puerto Rico, Inc. v. Puerto Rico Labor Relations Bd.*, 454 F.2d 38 (1st Cir. 1972) expressly rejected a literal reading of the term "state court" in the statute and instead adopted a "functional approach" which requires the

Court to examine: (i) the agency's procedures and power in the particular proceeding before it; (ii) the traditional forum of resolving disputes such as the one at issue; and (iii) the respective state and federal interests in the subject matter at issue and the provision of a forum to determine whether the agency should be treated as a "state court" for removal purposes. These factors uniformly demonstrate that the Board is a court for removal purposes. As described in the Affidavit of the Board's former longtime Chairman, Joseph Shekarchi, Esq., filed herewith, under the applicable statutes and in practice, the Board acts distinctly like a court when presiding over and adjudicating inter party disputes between automobile manufacturers and/or distributors and dealers. No matter how many times Bald Hill incorrectly characterizes this case as a complicated regulatory "licensing" matter, what is solely at issue is whether Bald Hill breached the terms of the Dealer Agreement and whether SNE properly has terminated Bald Hill's Subaru Dealer Agreement and franchise. The straightforward issues of contract and statutory interpretation from which this dispute arises are traditionally brought to and decided by courts. Indeed, the statutes governing the Board expressly provide for an action in court on these issues; likewise, the injunctive relief and attorneys fees sought by Bald Hill are traditional judicial remedies.

Further, Bald Hill's efforts to turn this termination case into a supposed licensing dispute is a late contrivance in response to SNE's lawsuit. At no time during the many months following SNE first providing notice to Bald Hill of its poor performance did Bald Hill go to the Board and complain that SNE was doing anything which should put its license to do business in Rhode Island in jeopardy. Nor could Bald Hill have done so where applicable Rhode Island law makes clear that a notice of poor performance or termination sent out in good faith cannot be the basis for any action against a manufacturer or distributor. R.I. Gen. Laws 31-5.1-4(b)(4).

*Second*, even if removal were somehow deemed to be technically improper, this Court should dismiss rather than remand the case to the Board where remand would be futile because the Board fundamentally lacks jurisdiction to adjudicate Bald Hill's alleged claims or to grant it the relief it seeks.

*Finally*, although Bald Hill cites to and attempts to invoke virtually every recognized abstention doctrine to convince this Court to relinquish its jurisdiction of this case, it correctly recognizes that abstention is an extraordinary and narrow exception to a federal court's virtually unflagging duty to exercise the jurisdiction given to it. Bald Hill offers absolutely no basis for the Court to justify application of this extraordinary and narrow doctrine to this case. The fact that "Bald Hill desires that all matters . . . be resolved by the Board," BH Memo at 16, is an insufficient basis upon which to request that this Court decline to hear this case.

Bald Hill's Motion to Remand should be denied.

## FACTUAL BACKGROUND

SNE has set out in detail the factual background and procedural history of this dispute in its Opposition to Bald Hill's Motion to Dismiss in the earlier-filed and related action titled Subaru of New England, Inc. v. Bald Hill Realty Co. d/b/a Bald Hill Subaru, Civil Action No. 2007-249-S. In the interest of efficiency and to avoid duplication, SNE will not repeat that detail here, but rather respectfully refers the Court to its Opposition to Bald Hill's Motion to Dismiss and provides the following by way of brief background. A copy of the Opposition is attached hereto as Exhibit A.

Bald Hill has been an authorized Subaru dealer for many years pursuant to successive Subaru Dealer Agreements with SNE. Its most recent Subaru Dealer Agreement ("Dealer Agreement") with SNE, as amended, has a term of April 1, 2004 through March 31, 2009. Bald

Hill's performance in selling new Subaru motor vehicles has been poor. Over the course of the Agreement, Bald Hill failed to satisfy the reasonable performance criteria required by the Agreement as set by SNE. Statistics maintained by SNE demonstrate that Bald Hill has been consistently among the worst, or the worst, performer of any dealer authorized by SNE to sell Subaru Products in New England. SNE provided Bald Hill with suggestions over the years regarding its substandard management and to improve its dismal sales performance on many occasions, but Bald Hill refused to act on SNE's suggestions and continued to operate in breach of the material sales performance and personnel provisions of the Agreement, resulting in no significant improvement in Bald Hill's new Subaru sales. By 2006, Bald Hill's downward spiraling performance could be countenanced no longer.

Faced with Bald Hill's bleak and worsening performance, particularly in the vital area of new Subaru sales, on November 7, 2006, SNE met with Bald Hill and reviewed Bald Hill's performance in detail. Following the meeting, on November 14, 2006, SNE provided to Bald Hill notice of failure of performance in which SNE detailed Bald Hill's poor sales performance, spelled out the sales objectives Bald Hill should meet to correct its sales deficiencies, and gave Bald Hill more than six months to do so. In the notice of failure of performance, SNE specifically advised that unless Bald Hill corrected its deficiencies on or before May 31, 2007, SNE would send Bald Hill Notice of Termination of its Subaru Dealer Agreement and franchise.

SNE continued to offer to meet with Bald Hill and to provide suggestions as to how to improve its performance. Bald Hill chose not to follow any of SNE's suggestions. Bald Hill also did not use the six-month cure period to make a reasonable effort to correct its sales deficiencies. Due to its failure to make any effort to correct its sales deficiencies, SNE, by letter dated June 6, 2007, provided Bald Hill with a Notice of Termination of Subaru Dealer

Agreement and Franchise ("Termination Notice"). In the Termination Notice, SNE advised that it was terminating Bald Hill's Subaru Dealer Agreement and franchise effective September 10, 2007. Both before and after SNE sent the Notice, SNE and Bald Hill representatives discussed the possibility of termination and, later, the fact of termination. Although Bald Hill advised SNE that it would oppose any effort by SNE to terminate its Agreement and Subaru franchise, Bald Hill failed to file a proceeding in any forum challenging the termination until two months after receiving the Termination Notice and when only one month remained until the termination's effective date.

## PROCEDURAL HISTORY

Nearly one month after providing the Termination Notice to Bald Hill and with termination quickly approaching, on June 29, 2007, SNE filed an action in federal court in the District of Rhode Island, C.A. No. 07-249-S-DLM, seeking a declaratory judgment that: (i) Bald Hill materially breached its Subaru Dealer Agreement with SNE; (ii) that SNE's June 6, 2007 notice of termination of the Subaru Dealer Agreement between SNE and Bald Hill and SNE is lawful and proper; and (iii) that SNE may lawfully terminate Bald Hill's Subaru Dealer Agreement and Bald Hill's Subaru franchise effective September 10, 2007. SNE openly informed Bald Hill that it had filed suit and then met with Bald Hill to discuss potential resolution. During the parties' discussions, Bald Hill never indicated that it intended to file a separate proceeding in any forum challenging termination. When Bald Hill failed to pursue settlement discussions in a timely manner, SNE arranged to serve the Summons and Complaint; Bald Hill was served on July 19, 2007.[1]

[1] SNE's counsel sent process out to be served after Bald Hill failed to return phone calls for days; a follow-up settlement meeting was scheduled only after process had been sent out for service and only after SNE's counsel had advised Bald Hill's counsel that the case needed to move forward and Bald Hill should stop delaying communications.

On August 8, 2007, Bald Hill filed its Motion to Dismiss, or in the Alternative, Motion to Stay ("Motion to Dismiss") the declaratory judgment action, arguing: (i) that SNE had failed to meet the amount in controversy requirement for diversity jurisdiction; and (ii) that the Court should abstain from exercising jurisdiction over SNE's case. SNE filed its Opposition to the Motion to Dismiss on August 22, 2007.

It was only from the Motion to Dismiss that SNE learned that Bald Hill had filed a proceeding with the Board several days before. Bald Hill filed an amended complaint with the Board the next day, a fact which Bald Hill learned only when its counsel visited the Board to obtain a copy of the file on August 8, 2007. Bald Hill's Board filings asked the Board, among other things, to adjudicate the termination dispute, to award it attorneys' fees and costs, and, remarkably, to revoke SNE's license to sell Subarus in Rhode Island. Pursuant to 28 U.S.C. §§ 1441(a) and 1446(b), SNE removed the Board action to this Court in this action on August 8, 2007. Bald Hill filed its Motion to Remand on September 4, 2007.

This is not the first time the parties have litigated this issue. The first time was in 1999, and it was resolved in favor of this Court exercising jurisdiction and not abstaining (Torres, J., presiding). In 1999, Bald Hill sought to have the Board adjudicate earlier termination proceedings. SNE removed the Board proceeding to this Court in the action entitled *Bald Hill Realty Co. d/b/a Bald Hill Subaru v. Subaru of New England, Inc.*, Civil Action No. 99-466 and filed a separate related action in this Court in *Subaru of New England, Inc. v. Bald Hill Realty Co. d/b/a Bald Hill Subaru*, Civil Action No. 99-444 ("the 1999 Proceedings"). Just as it has done here, Bald Hill moved to remand the removed action and moved to dismiss Subaru of New England's separate action. The Court (Torres, J.): (i) found that the Board qualified as a court within the meaning of 28 U.S.C. § 1441(a) and, therefore, that Bald Hill's 1999 Board Complaint

was properly removed, and denied Bald Hill's motion to remand; and (ii) denied Bald Hill's motion to dismiss SNE's action on abstention grounds as moot. A copy of the transcript of the hearing before Judge Torres and his decision from the bench ("Transcript of Hearing and Decision") is attached hereto as Exhibit B.

## ARGUMENT

### I. Removal Was Proper Because The Board Is A "State Court" For Purposes Of The Removal Statute Under The First Circuit's Functional Approach.

Bald Hill does not dispute that this Court has subject matter jurisdiction over the parties' dispute,[2] or that SNE removed this case from the Board within the appropriate time period. *See* 28 U.S.C. §§ 1441(a) and (b), 1446(b). Bald Hill instead argues only that SNE did not remove this action from a state court proceeding. Bald Hill's argument is without merit.[3] In resolving the contract and straightforward statutory interpretation issues raised by Bald Hill's Complaint and Amended Complaint, the Board would function in this matter similar to a state court and removal is, therefore, appropriate under 28 U.S.C. § 1441(a).

The First Circuit Court of Appeals decided long ago that the label given to an

---

[2] The parties are diverse and the amount in controversy requirement is met. *See* 28 U.S.C. §1332. This issue has been briefed exhaustively in connection with Bald Hill's Motion to Dismiss in the related proceeding entitled *Subaru of New England, Inc. v. Bald Hill Realty Co. d/b/a Bald Hill Subaru*, Civil Action No. 2007-249-S. *See* Exhibit A.

[3] As a threshold matter, Bald Hill has waived any argument it had to remand this action to the Board. Bald Hill has already affirmatively participated in and sought relief from this Court in the action it now seeks to remand and it should not be allowed simultaneously to ask this Court to abdicate its jurisdiction altogether. Specifically, on September 4, 2007, contemporaneous with filing its Motion to Remand, Bald Hill filed a Motion for Temporary Restraining Order and Preliminary Injunction in this case, asking the Court to enter an injunction preventing SNE from carrying out termination in accordance with the Notice of Termination. On September 14, 2007, Bald Hill served extensive written discovery requests (interrogatories and document requests) on SNE in this case and in the declaratory judgment action, seeking discovery related to the claims alleged in both cases. Copies of Bald Hill's discovery requests are attached hereto at Exhibit C. These are precisely the types of actions that courts have found to constitute waiver of a right to seek remand. *See, e.g., Johnson v. Helmerich & Payne, Inc.*, 892 F.2d 422, 423 (5th Cir. 1990) (Plaintiff waived its right to seek remand "by engaging in discovery."). *See also Lanier v. American Bd. of Endodontics*, 843 F.2d 901, 905 (6th Cir. 1988) (waiver found where "before filing her motion to remand to state court, plaintiff entered into stipulations, filed requests for discovery, sought to amend her complaint, filed a new lawsuit against defendant in federal court, demanded trial by jury, and proceeded with discovery.").

administrative agency is not determinative of the removability of a proceeding before it. *Volkswagen de Puerto Rico, Inc. v. Puerto Rico Labor Relations Bd.*, 454 F.2d 38 (1st Cir. 1972).[4] It is instead necessary to evaluate the powers, functions, and procedures of the state tribunal and to consider those factors with respect to state and federal interests in the subject matter of the proceeding and in the provisions of the forum. *Id.* at 43-44. While nonjudicial proceedings before state bodies may not be removed, actions pending before state agencies which, although not literally courts, follow procedures which may be described as judicial in character, are removable where the federal court has subject matter jurisdiction. *See id.*; *Floeter v. C.W. Transp., Inc.*, 597 F.2d 1100 (7th Cir. 1979); *Tool & Die Makers Lodge No. 78 v. General Elec. Co. X-Ray Dep't*, 170 F. Supp. 945 (E.D. Wis. 1959). *See also Kolibach v. Committee on Legal Ethics*, 872 F.2d 571 (4th Cir. 1989); Moore's *Federal Practice*, ¶ 0.157 [4-6].

The court in *Tool & Die Makers* summarized the rule as follows:

> In the construction of Federal statutes dealing with proceedings in State courts, *it is clear that the Supreme Court of the United States has adopted a functional rather than a literal test.* Thus the question of whether a proceeding may be regarded as an action in a State court within the meaning of the statute is *determined by reference to the procedures and functions of the State tribunal rather than the name by which the tribunal is designated. Upshur County v. Rich*, 1890, 135 U.S. 467, 10 S.Ct. 651, 34 L.Ed. 196; *Prentis v. Atlantic Coast Line Co.*, 1908, 211 U.S. 210, 29 S.Ct. 67, 53 L.Ed. 150.

170 F. Supp. at 950 (emphasis added). The court in *Tool & Die Makers* noted that a state could not defeat a party's right to have its case heard in federal court by establishing procedures and a non-judicial forum for resolution of particular disputes. *Id. See also Floeter*, 597 F.2d at 1102 ("[T]he title given a state tribunal is not determinative; it is necessary to evaluate the functions, powers, and procedures of the state tribunal and consider those factors along with the respective

[4] The question whether a body is a "court" for purposes of removal jurisdiction is a matter of federal law. *See Shamrock Oil & Gas Corp. v. Sheets*, 513 U.S. 100, 104 (1941).

state and federal interests in the subject matter and in the provision of a forum.").

Following the reasoning of *Tool & Die Makers*, the First Circuit in *Volkswagen* rejected "an unquestioning acceptance of nomenclature, i.e., that the Board is a board and not a court," and adopted the "functional approach". 454 F.2d at 43-44.[5] Under the functional approach, this Court should evaluate: (i) the agency's procedures and power in the subject proceeding; (ii) the traditional forum of resolving disputes such as the one at issue; and (iii) the respective state and federal interests in the subject matter at issue and the provision of a forum. *Id.* at 44 ("Concentrating on such factors seems to us far more satisfactory than to be content with a Steinian rendering of "a board is a board is a board.").[6] These factors weigh decidedly in favor of removal here.

First, in this case, like in the 1999 Proceedings, the Board would have to decide whether Bald Hill breached its contract with SNE or otherwise acted unlawfully and whether SNE is entitled to terminate its relationship with Bald Hill under the Dealer Agreement and Rhode Island law. This proceeding (if the Board could properly entertain it at all) would be distinctly judicial in character. This is supported by the Affidavit of the founding and longtime (now former) Chairman of the Board, Joseph Shekarchi, Esq. ("Shekarchi Affidavit") (attached at Exhibit D), who drafted its enabling legislation and developed it as an agency. As set forth in

---

[5] Bald Hill argues, as it argued before Judge Torres in the 1999 Proceedings, that the Third Circuit's opinion in *Sun Buick, Inc. v. Saab Cars USA, Inc.*, 26 F.3d 1259 (3d Cir. 1994), requires remand. Bald Hill's reliance on *Sun Buick* is misplaced. Judge Torres rejected this argument and this Court should too. First, *Sun Buick* is contrary to controlling First Circuit precedent in *Volkswagen*. Further, the *Sun Buick* court questioned, but did not explicitly reject the functional test and even recognized that the First, Fourth and Seventh Circuits had adopted it. 26 F.3d at 1261-64. Second, after questioning the functional test, the *Sun Buick* Court held that the Board in that case did not possess the requisite judicial indicia necessary for it to be considered the functional equivalent of a "state court," while at the same time evaluating the board's broad regulatory powers over other matters. *Id.* at 1264-67. This type of broad inquiry is inconsistent with the narrow inquiry contemplated by *Volkswagen*. In any event, as discussed in the text, the Board here possesses many of the mechanisms of a state court and under *Volkswagen* should be deemed a state court for removal purposes.

[6] Contrary to Bald Hill's contention, the *Volkswagen* court did *not* state that the removal of agency proceedings to federal court should not be "cavalierly" undertaken. Rather, the First Circuit stated that an analysis under the functional approach to removal jurisdiction should not be "cavalierly" made. *Volkswagen*, 454 F.2d at 44.

Mr. Shekarchi's Affidavit, inter-party proceedings before the Board are adjudicatory and judicial in nature, and the Board operates in the same manner as a court. Such proceedings have the threshold characteristic of a civil action in state court in that they are between private parties who are adverse to each other, and they are commenced by complaint upon one party's charge and the Board orders the other party to respond. Shekarchi Affidavit ¶6. *See Volkswagen*, 454 F.2d at 44 ("The proceeding before the Board has the threshold characteristic of a 'civil action in a State court' in that it is inter partes.").

The enabling legislation applicable to the Board specifically requires the Board to follow the Rhode Island Administrative Procedures Act, R.I. Gen. Laws §42-35-1 et seq. in conducting any hearing. *See* R.I. Gen. Laws § 31-5-2.1(d). The statute sets forth the framework for inter-party proceedings before the Board and further confirms that the Board acts like a court when it hears disputes between private parties. In particular, such proceedings have the following judicial characteristics:

- The Board must generally follow "[t]he rules of evidence as applied in civil cases in the superior courts of [Rhode Island]." R.I. Gen. Laws § 42-35-10(a).
- The parties are entitled to present and respond to evidence and argument. *See* R.I. Gen. Laws § 42-35-9(c).
- The parties may conduct cross-examination. *See* R.I. Gen. Laws § 42-35-10(c).
- The Board may take notice of "judicially cognizable facts." *See* R.I. Gen. Laws § 42-35-10(d) (emphasis added).
- The Board must give effect to "the rules of privilege recognized by law." R.I. Gen. Laws § 42-35-10(a).
- For those matters which the Board has jurisdiction to adjudicate, it has the power to set the date and time for the hearing. *See* R.I. Gen. Laws § 31-5-17.
- The Board may subpoena witnesses, it may consider depositions of witnesses and it may administer oaths. R.I. Gen. Laws § 31-5-17 (emphasis added).

- The Board's orders after hearing must include "findings of fact" and "conclusions of law." R.I. Gen. Laws § 42-35-12.

- The Board's orders and decisions may be appealed to the state Superior Court. See R.I. Gen. Laws § 42-35-15.

- The Board has the power to refuse to stay its order pending appeal. *See* R.I. Gen. Laws § 42-35-15(c).

*See also* Shekarchi Affidavit ¶¶7-9. As Mr. Shekarchi explains in his Affidavit, in presiding over inter-party proceedings, the Board carefully follows the procedures set forth in these statutes:

> Attorneys appear for the parties in the proceedings, witnesses are sworn and testify under oath in a trial setting, and a record is created of hearings before the Board. Evidence is admitted subject to the rules of evidence, experts must be qualified to testify as they are in court, and the Board considers depositions under circumstances where witnesses are out of state or otherwise unavailable. After hearings, the Board members review the evidence, deliberate, and issue findings of fact and conclusions of law. Out of state attorneys for parties who wish to appear before the Board must obtain admission *pro hac vice* from the Rhode Island Supreme Court.

Shekarchi Affidavit ¶8.

Bald Hill nevertheless asserts that "although the adjudicative format available before the Board may suggest that the Board is acting in a judicial function, Bald Hill has evoked the Board's powers to issue rules and regulations governing SNE's licensing. . .," this is a "statutory enforcement action," and thus that all of the functional approach factors support remand. Bald Hill Memo at 8-10. Bald Hill made the same argument in the 1999 Proceedings and Judge Torres saw through and soundly rejected it. There, like here, the crux of the dispute before the Board was whether Bald Hill had breached the Dealer Agreement and whether SNE had the right to terminate Bald Hill's Subaru Dealer Agreement and franchise. As Judge Torres explained in the 1999 Proceedings:

> It seems pretty clear in this particular case that the essence of the dispute and the gist of the complaint filed with the commission, is a contractual dispute. It is whether or not Bald Hill has breached the terms of its contract with Subaru of New England. And, if so, whether Subaru of New England is entitled under that contract to terminate the dealership arrangement. And contract disputes like that are traditionally matters that are addressed by Court. They involve questions of law that are typically within the province of Courts to decide. Furthermore, the gist of the relief being sought from the commission is to prevent or enjoin Subaru of New England from making good on its threat to terminate the dealership agreement with Bald Hill. And injunctive relief, again, is not only typically but exclusively a power that is exercised by Courts and not administrative agencies.
>
> So with respect to this particular dispute, the nature of the relief being claimed and what the commission is really being asked to do, all cast the commission in the role of a Court. I think it does qualify as a Court within the meaning of the removal statute.
>
> And therefore the case was properly removed in the first place, and the motion to remand should be denied.

Transcript of Hearing and Decision at 29-30.[7] The same is true here.

What Bald Hill truly seeks from the Board is a ruling that SNE somehow has violated Rhode Island law requiring good cause and good faith for certain dealer terminations and that Bald Hill has not breached its contract with SNE or otherwise acted unlawfully. None of these issues fall within any specialized expertise of the Board. Indeed, these are traditionally and commonly judicial determinations. *See Volkswagen*, 454 F. 2d at 44 ("As to the locus of traditional jurisdiction, it is clear that ordinarily courts have adjudicated breaches of contract.");

---

[7] Bald Hill contends that its purported licensing complaint against SNE makes this case different from the 1999 case, which it contends did not involve a licensing complaint. This contention is demonstrably incorrect. In its 1999 complaint to the Board, Bald Hill sought revocation or suspension of SNE's license under the same statutory provisions it relies on in this case. See Bald Hill's 1999 Board Complaint, attached hereto as Exhibit E, at pages 12-13.

Moreover, Bald Hill argued to Judge Torres in the 1999 case, just as it argues to this Court that, the parties' dispute primarily was a licensing dispute, as opposed to a contract case. A portion of Bald Hill's oral argument on this very issue was: "[t]his is not a contract case. This is a case that involves SNE which is licensed to operate in the State of Rhode Island and it's [sic] statutory scheme regarding the enforcing those [sic] regulations regarding SNE to operate in the State of Rhode Island under its license and also the franchise agreement between SNE and the dealer. . ." Transcript of Hearing and Decision at 8.

Judge Torres rejected Bald Hill's licensing argument, noting that what Bald Hill sought was basically injunctive relief stopping SNE from terminating the Dealer Agreement and franchise. *See* Transcript of Hearing and Decision at 29-30.

*see also Corwin Jeep Sales & Serv., Inc v. American Motor Sales Corp.*, 670 F. Supp. 591, 595 (M.D. Pa. 1986). The statutory scheme itself provides that precisely the kind of claim Bald Hill makes here can (and indeed, as discussed below, exclusively must) be brought directly in a judicial forum, without exhausting any alleged administrative remedy. Pursuant to § 31-5.1-13, a dealer (or any "aggrieved" party) may file an action directly in a judicial forum seeking redress for the violation of the statute.[8] Likewise, what Bald Hill seeks from the Board are traditionally judicial remedies. This includes, for example, Bald Hill's request for: (i) a "stay" of termination pending resolution on the merits – in other words, an injunction – that Bald Hill asked the Board to enter before SNE removed the action to this Court; (ii) the equivalent of a permanent injunction preventing SNE from terminating its Dealer Agreement and Subaru franchise pursuant to the Termination Notice; and (iii) attorneys' fees. This only further reinforces that the dispute Bald Hill asks the Board to adjudicate would require the Board to act precisely like a court.

Bald Hill's contention that the Board possesses broad regulatory powers is irrelevant under *Volkswagen*, which requires that the Court look instead only to the manner in which the administrative agency will function in the particular proceeding from which removal is sought, and not the manner in which it functions in other capacities. 454 F.2d at 43-44 (issue is how agency functions in proceeding brought under specific statutory provision, not how it functions under other statutory provisions). Bald Hill brought its Complaint and Amended Complaint before the Board under R.I. Gen. Laws § 31-5.1-4 (a section of the statute which, in any event, applies only to manufacturers and not to distributors like SNE), declaring certain acts and practices unlawful. *See, e.g.*, Amended Complaint, introductory paragraph. Section 31-5.1-4 is

---

[8] The cases reported in the annotated Rhode Island statutes, discussing the provisions at issue in this case, are court cases – not decisions of the Board. When terminated dealers sought speedy consideration of the propriety of terminations in the past, they filed lawsuits, not Board protests. *See, e.g., Scuncio Motors, Inc. v. Subaru of New England, Inc.*, 555 F. Supp. 1121 (D.R.I. 1982), *aff'd*, 715 F.2d 10 (1st Cir. 1983); *Dunne Leases Cars & Trucks, Inc. v. Kenworth Truck Co., a Div. of Paccar, Inc.*, 466 A.2d 1153 (R.I. 1983).

not a licensing statute; nor does it authorize any regulatory action. The only issue is how the Board would function in resolving Bald Hill's Complaint and Amended Complaint – not how it would function in other contexts. If the Board had jurisdiction to entertain this dispute, which as discussed below it does not, in resolving Bald Hill's claims in accordance with the trial procedures described in Mr. Shekarchi's Affidavit and set forth in the Administrative Procedures Act and in the statutes directly applicable to the Board, the Board would function like a court resolving a dispute between private parties.

Finally, Bald Hill argues that this case "departs from *Volkswagen* . . . in that only state interests are at stake" as demonstrated, says Bald Hill, by the fact that the state has enacted statutes governing manufacturers, distributors and dealers and established the Board as a forum for these types of disputes. BH Memo at 10. As is discussed below, however, the Board does not even have jurisdiction to hear the dispute Bald Hill has attempted to put before it and even if it did, the breach of contract and straightforward statutory interpretation issues raised by this case do not implicate any particular state interest.[9] Congress created removal jurisdiction to ensure that an out-of-state defendant was not prejudiced by a plaintiff's "home field advantage" in a state forum. *Corwin Jeep Sales & Serv.*, 670 F. Supp. at 595 n.3. If an identical action had been brought in the state court, as authorized by the statute, there would be no question as to the defendant's right to remove. *Id.* at 594. Bald Hill's pursuit of its alleged claims before the Board does not – and cannot – defeat SNE's right to remove. *Id.* at 594-595 ("[T]he Board is acting in this case not in its administrative or regulatory capacity, but to resolve the dispute

[9] Weighing state and federal interests in the removal context where federal jurisdiction is based upon undisputed diversity jurisdiction does not meaningfully assist in determining whether the Board should be deemed a state court for removal purposes where, as here, the dispute evokes no particular expertise of the Board. Indeed, here, like in the 1999 Proceedings, as Judge Torres pointed out explicitly, of the three functional approach factors, the first two factors (whether the agency will act like a court in addressing the particular proceeding at issue and the traditional forum for the type of disputes at issue) "are the most helpful to look at." Transcript of Hearing and Decision at 29.

between the parties concerning the franchise agreement. Accordingly, the state's interest in implementation of its regulatory mechanism is not at stake in this case; [the state] has no greater interest in this matter than it does in the resolution of any other private dispute between individuals.").[10]

Apparently recognizing that the *Volkswagen* functional approach supports removal and requires denial of its Motion to Remand, Bald Hill stumbles through the *Volkswagen* factors and turns quickly to an argument that this Court should cast *Volkswagen* aside altogether and effect a sweeping change in the law, suggesting that the Court "reconsider the 'functional test' and its application to this case" because of what Bald Hill calls "an apparent shift in the law and policy applicable to removal in recent years." Bald Hill Memo at 11. To illustrate this supposed "apparent shift" in law and policy, Bald Hill cites to only one case that was decided after Judge Torres categorically rejected its same arguments in the 1999 Proceedings. In that one case, *Oregon Bureau of Labor ex rel. Richardson v. U.S. West Communications, Inc.*, 288 F.3d 414 (9th Cir. 2002), the Ninth Circuit Court of Appeals, offering little analysis, rejected the functional approach based solely on the fact that the statute uses the words "state court," and concluded that the language of the statute is "dispositive" and that the agency before it – the Oregon Bureau of Labor and Industries – was, by definition, not a "state court" regardless of its functions.[11] The United States Supreme Court rejected this "a court is a court" approach more

[10] The state has no unique interest in the resolution of such issues. Bald Hill is also simply wrong in stating that there is no federal interest in resolving disputes between dealers and manufacturers because there allegedly is "no federal substantive law governing [such] disputes." In fact, there is a vast body of federal law addressing just such disputes, the Automobile Dealer Day In Court Act, 15 U.S.C. §§ 1221-25, enacted in 1956.

[11] Bald Hill argues also that "[s]ince the time of the 1999 proceedings between these parties, the Seventh Circuit Court of Appeals has applied the 'functional test' to deny removal and grant remand," citing to *Wirtz Corp. v. United Distillers & Vintners N.A., Inc.*, 224 F.3d 708 (7th Cir. 2000). BH Memo at 11-12. *Wirtz* was, however, decided in February 2000, eight (8) months before Judge Torres heard argument on and denied the Motion to Remand in the 1999 Proceedings (on October 16, 2000). *Wirtz*, therefore, simply does not constitute a subsequent departure from the functional approach analysis applied by Judge Torres. More importantly, *Wirtz* is distinguishable

than a century ago in *Upshur County v. Rich*, 135 U.S. 467, 471 (1890) (rejecting removal of appeal from tax assessment where Upshur County court "ha[d] no judicial powers, except in matters of probate. In all other matters it is an administrative board."). The Ninth Circuit in *Oregon Bureau of Labor* itself acknowledged that *Upshur County* stands for "the undisputed principle that the 'label' a state attaches to a tribunal does not control the question of whether the tribunal is a 'court' for removal purposes," but nevertheless and inexplicably betrayed that same "undisputed principle" by concluding that the statute authorizes removal only if the action is pending in an actual state court. 288 F.3d at 419. Nothing in the Ninth Circuit's opinion or in any of the other cases cited by Bald Hill (the remainder of which were decided before Judge Torres ruled that the parties' 1999 termination dispute belonged in this Court not before the Board) provides any basis for undoing nearly four decades of established First Circuit law to the contrary.[12] The Motion to Remand should be denied.

## II. Even If Removal Had Been Improper, Dismissal, Not Remand Is Proper Because The Board Has No Jurisdiction To Adjudicate This Termination Dispute.

Even if the Court were to find that removal was technically improper, it should dismiss this case rather than remand it to the Board because remand would be absolutely futile since the Board has no jurisdiction to entertain this termination dispute. Although remand is required where the federal court lacks subject matter jurisdiction, 28 U.S.C. §1447(c), dismissal is

---

here, as it was in October 2000, because the Court there reviewed the functions of the administrative agency at issue – the ILCC – generally and broadly, rather than looking at whether the agency would act like a court in the particular proceeding before it, as is required in the First Circuit. Under the correct analysis, the Board is a state court for removal purposes and the Motion to Remand should be denied.

[12] Judge Torres also had before him Magistrate Judge Robert W. Lovegreen's Report and Recommendation in *Nissan of Smithfield v. Nissan Motor Corp.*, Civil Action No. 97-701L, in the 1999 Proceedings when he found that Bald Hill's virtually identical claims in those proceedings belonged in this Court and not in front of the Board and denied Bald Hill's motion to remand. *See, e.g.*, Transcript of Hearing and Decision at 4-5, 20. Aside from the fact that *Nissan* dealt with a termination by a manufacturer and not a distributor like SNE, in *Nissan*, Magistrate Judge Lovegreen incorrectly examined the breadth of the Board's powers in general rather than looking solely at how the Board would function in the particular proceeding before it. Magistrate Judge Lovegreen's Report and Recommendation was never accepted by the Court in any event. The docket reflects that Nissan Motor Corp. objected to the Report and Recommendation and the case settled before the objection was adjudicated.

warranted where the Court can "'say with absolute certainty that remand would prove futile.'" *Hudson Savings Bank v. Austin*, 479 F.3d 102, 108-09 (1st Cir. 2007) (citing *Me. Ass'n of Interdep. Neighborhoods v. Comm'r, Me. Dep't of Human Servs.*, 876 F.2d 1051, 1054 (1st Cir.1989)). First, and fundamentally, this Court indisputably has subject matter over this case. The fact that Bald Hill claims that the Board should not be treated like a court for removal purposes does not change the fact that Bald Hill could have brought this action to this Court in the first instance. Indeed, the issue of whether the Board is a court under section 1441(a) is precisely the type of technical removal issue that can be waived if not raised within thirty (30) days of removal as opposed to a subject matter jurisdiction issue that could be raised at any time including after judgment. Second, and more importantly, this case falls precisely into the admittedly narrow category of cases that calls out for dismissal rather than remand because it is crystal clear that remand would be futile. As is discussed in more detail in SNE's Opposition to Bald Hill's Motion to Dismiss, there are at least three independent reasons that the Board does not have jurisdiction to hear Bald Hill's alleged claims or grant it the relief it seeks.

First, the Board lacks jurisdiction over Bald Hill's complaint and amended complaint in the circumstances of this case most fundamentally because SNE is a *distributor*, not a *manufacturer*, while all of the provisions of Section 31-5.1 which Bald Hill alleges SNE violated, by their plain language, impose obligations only on *manufacturers*, not on *distributors*. *See generally* R.I. Gen. Laws §§ 31-5.1-4, 31-5.1-4(d)(1), 31-5.1-4(d)(2). The Board thus has no more jurisdiction to hear Bald Hill's complaint that SNE violated these provisions than it would have to hear a complaint brought by Bald Hill against a member of the general public.

Second, the Board does not have jurisdiction to adjudicate termination disputes or to grant Bald Hill the relief it seeks. Although Bald Hill has attempted to manipulate its requested

relief so as to fit within the Board's jurisdiction over licensing matters, the fundamental issue to be adjudicated (in the appropriate forum) is whether Bald Hill's breaches of contract justify termination of the Agreement (even assuming that SNE somehow could be regarded as a manufacturer), and the fundamental relief sought is an injunction preventing the termination of Bald Hill's Subaru Dealership Agreement and franchise. The normal procedural mechanism for challenging the termination of a dealer's agreement is a lawsuit in a court of law. Indeed, as discussed, Section 31-5.1-13 specifically authorizes aggrieved parties to pursue such claims in a judicial forum. This historic choice of the courts as the appropriate forum for termination disputes is directly related to the underlying legislation. In the one circumstance where the Board has jurisdiction over a dealer-initiated matter, it is specified in the statute: the Legislature expressly created a mechanism for a dealer to "file with the *department a protest to the establishing or relocating of the new motor vehicle dealership or adding an additional location. . .* for an existing new motor vehicle dealership." 31-5.1-4.2 (emphasis added). While the Legislature denoted certain kinds of conduct unlawful, including the conduct barred by 31-5.1-4(d)(1), the Legislature did not include the terminations described in that provision within the scope of the statute authorizing the Board to hear dealer protests. A dealer seeking to challenge a notice of termination must seek relief from a court, not the Board.

The Board is also not empowered to award Bald Hill the relief requested in its Board filings. The Board's powers to enforce R.I. Gen. Laws § 31-5.1, one of the two statutes relied on by Bald Hill in its Board Complaint, are set forth in R.I. Gen. Laws. § 31-5.1-12. Under section 31-5.1-12, the Board's authority is limited to revoking or suspending a license; nothing in that statute authorizes the Board to issue orders staying terminations or to issue cease and desist orders against a distributor like SNE. Rather, the Board may take action only to deny, suspend,

or revoke a distributor's license. See R.I. Gen. Laws §§ 31-5-2.1 and 31-5-23. Indeed, the *only* provision in the statutory scheme that authorizes the Board to issue cease and desist orders is directed against *dealers*, not *distributors*. See R.I. Gen. Laws. § 31-5-14.

Third and finally, Bald Hill does not have standing to initiate a license revocation proceeding in response to a notice of termination. Bald Hill cannot create jurisdiction where the Legislature did not intend for it to exist simply by including in its prayer for relief, among other things, a request that the Board take action against SNE's license. Regardless of how Bald Hill has tried to characterize its complaint, a motor vehicle dealer cannot initiate a license revocation proceeding against a distributor. Indeed, allowing dealers to trigger license revocation proceedings would convert every perceived slight that might arise in the distributor-dealer relationship into a license revocation proceeding. The Legislature recognized that the Board is not the proper forum to resolve such contractual disputes since it did not establish a protest procedure for such matters, and instead allocated them to the courts pursuant to § 31-5.1-13.[13]

As a matter of straightforward statutory construction, the Board lacks jurisdiction to adjudicate Bald Hill's alleged claims or to grant it the relief it seeks. If the Court finds that this case was improperly removed (which it was not) it should dismiss rather than remand it to the Board.

## III. There Is No Basis For This Court To Abdicate Its Virtually Unflagging Obligation To Exercise Jurisdiction Over This Case Under Any Abstention Doctrine.

After giving short shrift to the (controlling) *Volkswagen* functional approach and advocating for a complete reversal of longstanding First Circuit removal law, Bald Hill ultimately resorts to a kitchen sink abstention argument, citing virtually every recognized

---

[13] SNE acknowledges that the Board has jurisdiction under § 31-5.1-12 to suspend or revoke the operating licenses of dealers, distributors, and manufacturers. Such a licensing matter, however, only may be initiated *by the Board* after a proper investigation. R.I. Gen. Laws § 31-5.1-12 ("If the department deems that there has been a violation of this chapter, the department shall hold a show cause hearing for revocation or suspension…").

abstention doctrine as a basis for this Court to refuse to exercise its undisputed jurisdiction over this case. Bald Hill is correct when it points out repeatedly in its own papers that abstention is an extraordinary and narrow exception to a federal court's duty to adjudicate the controversies brought before it. The United States Supreme Court has in fact stated that "abstention rarely should be invoked, because the federal courts have a 'virtually unflagging obligation . . . to exercise the jurisdiction given them.'" *Ankenbrandt v. Richards*, 504 U.S. 689, 705 (1992) (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)). This case falls into none of the extremely narrow exceptions which justify abstention.

Bald Hill's arguments for abstention under the *Younger*[14] and *Colorado River* abstention doctrines are disposed of easily and at the outset because those doctrines fundamentally require an ongoing state judicial proceeding. *Ankenbrandt*, 504 U.S. at 705 ("[a]bsent any *pending* proceeding in state tribunals, therefore, application by the lower courts of *Younger* abstention was clearly erroneous."); *Baskin v. Bath Township Bd. of Appeals*, 15 F.3d 569, 571-72 (6th Cir. 1994) ("[a] necessary requirement for application of this *Colorado River* doctrine, however, is the presence of a *parallel,* state proceeding.") (emphasis in original); *Office of Child Advocate v. Lindgren*, 296 F.Supp.2d 178, 190 (D.R.I. 2004) ("[d]efendant's argument that this Court should abstain under *Younger* must fail because there is no known pending state proceeding with which this Court's judgment would interfere."). The only relevant state proceeding here, Bald Hill's later-filed proceeding before the Board, is no longer pending since SNE properly removed it to this Court on August 8, 2007. As this court stated in *Cioffi v. F.D.I.C.*,

> [b]ecause this controversy was removed from the state court, there are no concurrent proceedings. Thus, there will not be any duplicitous proceedings

[14] Abstention under *Younger v. Harris*, 401 U.S. 37 (1971) applies only when there is an ongoing state judicial proceeding, instituted prior to the federal proceeding, which implicates an important state interest, and provides an adequate opportunity for the plaintiff to raise the claims advanced in his federal lawsuit. *Brooks v. New Hampshire Supreme Court,* 80 F.3d 633, 638 (1st Cir. 1996).

> which would waste precious judicial resources. Consequently, the Court can not remand based on *Colorado River* or any other abstention doctrine.

861 F.Supp. 3, 7 (D.R.I. 1994). *See also In re Burns & Wilcox, Ltd.*, 54 F.3d 475, 478 (8th Cir. 1995); *Comm. of Virginia v. Bulgartabac Holding Group*, 360 F.Supp.2d 791, 797-98 (E.D. Va. 2005). As this matter does not meet the threshold factor necessary to even initiate an abstention analysis under the *Younger* or *Colorado River* doctrines, abstention under those doctrines is necessarily improper.[15]

Bald Hill's attempts to invoke the *Burford* or the *Thibodaux* abstention doctrines are similarly without merit and stem from its fundamental mischaracterization of these proceedings and a fundamental misunderstanding of the nature of abstention under those doctrines. *Burford* and *Thibodaux* allow a court to exercise its right to abstain only in very narrow situations where there exist difficult matters of state law which bear on policy problems of substantial import which transcend the proceeding at issue or to avoid disrupting state efforts to establish a coherent policy with respect to a matter of substantial public concern. *Colorado River*, 424 U.S. 800, 814. None of these concerns exists here.

This is a dispute between private parties which requires the Court only to determine whether Bald Hill breached the Dealer Agreement and whether SNE properly has terminated Bald Hill's Subaru Dealer Agreement and franchise. The statutes enacted by the Rhode Island legislature expressly contemplate judicial intervention in such disputes, stating that a dealer (or any "aggrieved" party) may file an action directly in a judicial forum seeking redress for the

[15] In addition to the threshold matter of the existence of no parallel state proceeding, the seven factors generally considered to determine the applicability of the *Colorado River* doctrine also clearly demonstrate that abstention would be improper here. *See Rio Grande Community Health Center, Inc. v. Rullan*, 397 F.3d 56, 71-72 (1st Cir. 2005); *U.S. v. Fairway Capital Corp.*, 433 F.Supp.2d 226, 238 (D.R.I. 2006). Here, there is no court which has assumed jurisdiction over a res, there is no geographical inconvenience for the parties involved, avoiding piecemeal litigation will be achieved through the consolidation of the matters presently before this Court, and there is currently no state forum where a matter is pending which would protect the parties' interest. The state law issues involved can be addressed by this Court using well developed principles of contract law and straightforward statutory interpretation. *See Fairway Capital Corp.*, 433 F.Supp.2d at 239-40.

alleged statutory violation. R.I. Gen. Laws. § 31-5.1-13. Allowing this case to proceed in court as contemplated by the statute would in no way disrupt a state administrative process. *See Rojas v. Fitch*, 928 F.Supp. 155, 160 (D.R.I. 1996) (*Burford* abstention "generally limited to cases in which a federal court decision would disrupt a state administrative process…or unnecessarily enjoin state officials from executing domestic policies") (internal citations and quotations omitted). This case also does not and will not affect or enjoin the Board's ability to promulgate regulations; rather it involves only the application of those relevant regulations and statutes to a dispute between two private parties. *See id. See also Polygon Ins. Co., Ltd. v. Honeywell Int'l, Inc.*, 143 F.Supp.2d 211, 216-17 (D. Conn. 2001) (abstention under *Burford* is not appropriate when court is only interpreting state law).[16]

Again, this termination dispute requires the Court only to interpret a contract and straightforward statutory language, tasks for which federal courts are well-suited. *See United Services Automobile Ass'n v. Muir*, 792 F.2d 356, 365 (3rd Cir. 1986); *Polygon Ins. Co., Ltd.*, 143 F.Supp.2d at 215-216 (D. Conn. 2001). There are no complex or unresolved questions of state law at issue in this matter, and even if there were, that fact alone would not provide the Court with a basis to abstain from exercising its jurisdiction. *Sevigny v. Employers Ins. of Wausau*, 411 F.3d 24, 29 (1st. Cir. 2005); *Bergeron v. Estate of Loeb*, 777 F.2d 792, 800 (1st. Cir. 1985). Bald Hill also has not shown beyond unsupported conclusory statements how this private dispute raises issues of substantial public import or how it could possibly affect the Board's ability to continue to promulgate regulations. *See Polygon Ins. Co., Ltd.*, 143 F.Supp.2d at 215 (abstention under the *Thibodaux* doctrine inappropriate where plaintiffs have not shown

[16] Abstention is particularly inappropriate under any analysis here where Bald Hill's Board proceeding was nothing more than an obvious reactionary and contrived, after-the-fact maneuver to avoid litigating before this Court and to obtain what Bald Hill perceives as a more favorable forum to it.

the public import or impact of statutory interpretation). Bald Hill simply offers nothing that comes close to justifying application of the extraordinarily narrow abstention available under *Burford* or *Thibodaux*. The Motion to Remand should be denied.

## CONCLUSION

For all of the reasons set forth above, Plaintiff Subaru of New England, Inc. respectfully requests that the Court deny the Motion to Remand.

Respectfully submitted,

SUBARU OF NEW ENGLAND, INC.

By its attorneys,

/s/ Mitchell R. Edwards

Mitchell R. Edwards (Attorney No. 6942)
Hinckley, Allen & Snyder
50 Kennedy Plaza, Suite 1500
Providence, RI 02903-2393
(401) 274-2000
(401) 277-9600 (fax)
medwards@haslaw.com

OF COUNSEL:

Howard M. Cooper (admitted *pro hac vice*)
Heidi A. Nadel (application for admission *pro hac vice* pending)
TODD & WELD LLP
28 State Street, 31st Floor
Boston, MA 02109
(617) 720-2626
Fax: (617) 227-5777
hcooper@toddweld.com
hnadel@toddweld.com

September 21, 2007