# EXHIBIT
# E

6

STATE OF RHODE ISLAND
PROVIDENCE, SC

DEALER'S LICENSE
COMMISSION

BALD HILL REALTY CO. D/B/A
BALD HILL SUBARU

RECEIVED
AUG 05 1999
RHODE ISLAND MOTOR VEHICLE DEALERS LICENSE & REGULATION

VS.

SUBARU OF NEW ENGLAND, INC.

COMPLAINT

Bald Hill Realty Co., d/b/a Bald Hill Subaru, ("Dealer"), a Rhode Island Corporation and a franchised and licensed Subaru Dealer brings this complaint against Subaru of New England, Inc. ("Manufacturer"), for violation of R.I.G.L. 31-5.1-4 which will be enumerated herein and requests a hearing of said violations.

1. Dealer has been a new car automobile dealer of Manufacturer since 1978 in the Warwick, RI area.

2. Since its inception, Dealer has been a leader in the New England Region every year, without exception, in the sale of Manufacturer's autos and number one in the State of Rhode Island.

3. Dealer has since its inception, maintained a very high (CSI) customer satisfaction rating in the region.

4. Dealer has expended considerable expense to build and maintain a state of the art facility in Warwick RI and expends significant monies in promotion and advertising of Manufacturer's product.

5. Dealer received the "Added Security Superstar Award" from Manufacturer for the years 1994, 1995, 1996, 1997, and 1998.

13. That neither Dealer or any officer of Dealer, nor any stockholder of Dealer, sold, transferred, or assigned the franchise.

14. That neither Dealer, nor any officer of Dealer, nor any stockholder of Dealer, sold, transferred, or assigned the power of management or control thereunder of the franchise.

15. That the franchise or power of management or control thereunder remained as it has been throughout the franchise agreement between Dealer and Manufacturer, i.e. 50% Petrarca, and 50% Hagan.

16. That at no time after Dealer notified Manufacturer of certain stock transfers to family members has manufacturer notified Dealer of any reasonable objection to said stock transfer.

17. Had Dealer notified Manufacturer prior to stock transfers to family members, any objection thereto by Manufacturer at said time would constitute unreasonably withheld consent, i.e in that there would be no basis to object to said family stock transfer.

18. At the time Dealer notified Manufacturer about stock transfers to family members, Dealer informed Manufacturer that to the extent necessary, Dealer and its shareholders were willing to execute any and all documents and agreements reasonably necessary to assure that the control of the company remained with those individuals who had been previously approved by Manufacturer subject to

whatever rights Dealer company and its shareholders may have under applicable law.

19. In response, Manufacturer has made no request for documents and/or agreements which they may deem needed to be executed to assure that the control of the Dealer Company remained with those individuals who had been approved by Manufacturer.

20. Manufacturer has not been prejudiced by Dealer's stock transfers to family members.

21. Robert G. Petrarca was named as General Manager of Bald Hill Subaru on the franchise agreement executed by Manufacturer and Dealer on or about April 4, 1996, hereinafter referred to as "Franchise Agreement".

22. During the duration of the franchise agreement, Manufacturer was aware that Robert G. Petrarca was General Manager of Bald Hill Subaru.

23. During the duration of the franchise agreement, Manufacturer had contacted Robert G. Petrarca directly regarding business issues between Manufacturer and Dealer.

24. Prior to the protest hearing, Manufacturer contacted Dealer in attempts to coerce Dealer to withdraw its protest.

25. As a result of Dealer's filing the protest, Mr. Phillip L. Lustbuster, Vice President of Subaru of New England, Inc. decided to issue a letter of termination on June 25, 1999, effective September 27, 1999, hereinafter referred to as "letter of termination".

26. Manufacturer, through its letter of termination, terminated Dealer's Franchise Agreement based upon Manufacturers allegation that Dealer violated Section 15.1.5 of the Dealership Agreement.

27. Section 15.1.5 of the Dealer Statement Agreement states:

> 15.1.5. Any change in the percentage of beneficial ownership of Dealer, or any transfer of any rights or obligations under the Agreement or a Significant Change of Ownership interest in either case whether voluntary, involuntary or by operation of law, without the prior written consent of Distributor, and if required by paragraph 14 of the Agreement of SOA.

28. Manufacturer alleges that Dealer's stock transfer to family members was made without notice to or prior approval of Manufacturer, in violation of the Dealer Agreement.

29. R.I.G.L. 31-5.1-14 states as follows:

> Contracts Void. Any contract or part thereof or practice thereunder in violation of any provision of this chapter shall be deemed against public policy and shall be void and unenforceable.

30. R.I.G.L. 31-5.1-4 (c) (7), as referred to in Paragraph 12 above, provides in relevant part:

It shall be deemed a violation of this chapter for a manufacturer, or officer, agent or other representative thereof:

> (7) To prevent or attempt to prevent by contract or otherwise any new motor vehicle dealer or any officer, partner or stockholder of any new motor vehicle dealer from selling or transferring any part of the interest of any partner or stockholder of any motor vehicle dealer from selling or transferring any part of the interest of any of them to any other person or persons or party or parties;

> provided, however, that no dealer, officer, partner or stockholder shall have the right to sell, transfer or assign the franchise or power of management or control thereunder without the consent of the manufacturer, except that such consent shall not be unreasonably withheld. (Emphasis supplied).

31. Consequently, in the instant matter, R.I.G.L. 31-5.1-14 voids Section 15.1.5 of the Franchise Agreement.

32. Manufacturer's conduct in trying to enforce a contractual provision violative of the motor vehicle chapter violates R.I.G.L. 31-5.1-4 which states in relevant part as follows:

> It shall be deemed a violation of this chapter for any manufacturer, or motor vehicle dealer to engage in any action which is arbitrary, in bad faith, or unconscionable and which causes damage to any of said parties or to the public.

33. In addition, Manufacturer, through its letter of termination, terminated Dealer's Franchise Agreement based upon Manufacturers allegation that Dealer had made a change in management without the prior written consent of Manufacturer. Specifically, Manufacturer through its letter of termination, objected to Robert G. Petrarca's management position with the Dealer.

34. Manufacturer's knowledge that Robert G. Petrarca was the General Manager of Dealer since the execution of the Franchise Agreement, together with Manufacturer's business dealings with Robert G. Petrarca as General Manager of Dealer constitutes a waiver of any objection and consent to Robert G. Petrarca as a member of dealer's management.

35. Manufacturer through its letter of termination of June 25, 1999 effective September 27, 1999, constitutes a

retaliatory action by manufacturer against Dealer because Dealer exercised its right pursuant to Rhode Island General Laws in the filing of its protest.

36. Manufacturer's action, through its letter of termination of June 25, 1999, effective September 27, 1999 constitutes unreasonably withheld consent.

37. Furthermore, on or about March 5, 1999, Dealer joined in a class action law suit with other Dealers in New England against Manufacturer and Ernest Boch, Jr. individually. Said complaint was filed in the U.S. District Court, District of New Hampshire, alleging, among other things, that Manufacturer engaged in an option packing scheme which is expressly prohibited under the laws of each of six New England states and more specifically, prohibited under R.I.G.L. 31-5.1-4.

38. In said class action law suit, it was specifically alleged, among other things, that Manufacturer engaged in a number of illegal and coercive tactics designed to force the Dealers to accede to the option packing scheme. These coercive tactics included imposing unreasonable performance standards and threatening termination or terminating Dealers based on these unreasonable standards and without good cause.

39. Manufacturer's action through its letter of termination, constitutes a further attempt by Manufacturer to retaliate against Dealer for Dealers participation in the class action law suit against Manufacturer and it is an

attempt by Manufacturer to coerce Defendant from exercising its legal rights to participate in said class action.

40. Manufacturer does not have good cause as required by R.I.G.L. 31-5.1-4 (d) (1) (ii) (iii) and has violated said Act by not acting in good faith by issuing a letter of termination. Further, Manufacturer's action in its letter of termination is arbitrary, in bad faith, unconscionable, and causes damages to Dealer and the public.

41. R.I.G.L. 31-5.1-12 authorizes this Commission to enforce the provisions of this Chapter and to hold the hearing to show cause why the Manufacturer should not be sanctioned and why it should not be ordered to comply with the sections of this chapter.

42. Further, the Dealer states that under 31-5-23 the Manufacturer failed to comply with 31-5-21 through 31-5-27 inclusive and as aforesaid stated, failed to comply with 31-5.1-1 through 31-5.1-16 inclusive.

43. The Manufacturer is guilty of violating 31-5-23 (6) in that the Manufacturer attempted to coerce Dealer through its letter of termination by attempting to force Dealer to withdraw its protest prior to the protest hearing.

44. The Manufacturer is guilty of violating 31-5-23 (6) in that the Manufacturer attempted to coerce Dealer through its letter of termination by attempting to impede Defendant from exercising its legal rights to participate in said class action.

45. The Manufacturer violated 31-5-23 (7) and has without provocation, cancelled the franchise of Dealer.

46. The Manufacturer violated 31-5-23 (8) in that it, without due regard to the equities of Dealer, without just provocation issued a letter of termination of Dealer's franchise.

WHEREFORE, Dealer respectfully requests that the commission under the powers given to it per 31-5.1-12 enforce the provisions of said chapter by finding that good cause does not exist and that the Manufacturer acted in bad faith, and that the Manufacturer be ordered to comply by revoking its letter of termination, and reinstating Dealer's franchise. Further, that the Manufacturer be sanctioned for acting in bad faith in violation of Rhode Island Law and be ordered to pay Dealer's attorneys fees and costs. In the alternative, that this Honorable Commission find that because of Manufacturer's misconduct, that its license to sell Subaru automobiles in the State of Rhode Island be revoked and/or suspended per R.I.G.L. 31-5-25.

BALD HILL REALTY CO. D/B/A
BALD HILL SUBARU

Michael J. McEntee
Attorney No: 2092
McEntee & McEntee
915 Tollgate Road
Warwick, RI 02886
(401) 823-3313